# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 2, 2021

Lyle W. Cayce
Clerk

No. 19-30968

GREGORY C. KAPORDELIS,

*Petitioner—Appellant*,

*versus*

RODNEY MYERS,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:19-CV-275

Before KING, HIGGINSON, and WILSON, *Circuit Judges*.
CORY T. WILSON, *Circuit Judge*:

Early one morning, federal inmate Gregory Kapordelis broke his government-issued continuous positive airway pressure mask (his CPAP mask). A Discipline Hearing Officer (DHO) found that Kapordelis violated Bureau of Prisons (BOP) Disciplinary Code 218, which prohibits "[d]estroying, altering or damaging government property . . . having a value in excess of $100." 28 C.F.R. § 541.3(b), Table 1 (2018). Deprived of twenty-seven days of good conduct time, Kapordelis filed a 28 U.S.C. § 2241 habeas petition challenging his disciplinary conviction. The district court denied Kapordelis's petition, and he appeals. We AFFIRM.

No. 19-30968

## I.

On August 9, 2018, Kapordelis reported to a medical unit at Oakdale Federal Correctional Institution (Oakdale), where he is incarcerated, and notified staff that he broke his CPAP mask. Staff members informed Kapordelis that he was not authorized to be in the medical unit, but he remained there for some time before leaving. He returned to the unit later that day, and the Operations Lieutenant was called to remove him.

An incident report was filed, and the matter was referred to the DHO for a hearing on disciplinary charges of being in an unauthorized area (Disciplinary Code 316), refusing to obey an order (Disciplinary Code 307), and destroying, altering or damaging government property in excess of $100 (Disciplinary Code 218). *See* 28 C.F.R. § 541.3(b). At the hearing, held August 27, 2018, Kapordelis stated that he awoke suffering from a "coughing fit" and tried to remove his CPAP mask. In doing so, he said the mask "just snapped." He contended that he did not deliberately break the mask and that, in the twelve years he had been wearing a CPAP mask, he had never broken one.

Several "statements"—in the form of emails from witnesses responding to inquiries from the DHO—were submitted at the hearing, including one from Dr. Kenneth Russell, the Oakdale inmate physician. The DHO had asked Dr. Russell prior to the hearing whether "it [was] likely an inmate could break a CPAP mask." Dr. Russell responded:

> I would have to see it first, some of these are made of hard plastic. Most of them you can [sit] on, and not break them. In general use, unless it is an old mask, or unless it did not fit their face, it would have to be intentional for it to break.

In addition to Dr. Russell's email, the DHO considered a statement from a CPAP Supply USA representative recorded in the initial incident report. The CPAP representative stated to Oakdale medical staff that "it is far from

common for the mask to just break unless it is user error." According to the record, the DHO also inspected Kapordelis's broken CPAP mask.

After receiving the evidence, the DHO issued a report that dismissed the charges against Kapordelis for refusing to obey an order and being in an unauthorized area but sustained the charge for damaging government property. The DHO acknowledged Kapordelis's assertions to the contrary but found that the CPAP representative's statement coupled with Dr. Russell's statement supported a finding that Kapordelis violated Disciplinary Code 218. Consequently, the DHO sanctioned Kapordelis with a loss of twenty-seven days of good conduct time.

Kapordelis administratively appealed, contending that the evidence that he broke the mask accidentally was unrebutted and that the CPAP representative's and Dr. Russell's statements were insufficient to show that Kapordelis deliberately broke the mask. Additionally, he asserted that the "DHO inspected the broken mask at the hearing" and "observed" that the mask part that broke was the plastic "flexible spacebar," which is "designed to bend when the mask is removed" and "is the most fragile part of the CPAP mask." He speculated that replacing the spacebar "would likely cost less than $20," well below Disciplinary Code 218's $100 threshold. Kapordelis also asserted that Dr. Russell never actually made the statement on which the DHO relied in sustaining the property-damage charge. Kapordelis's administrative appeal was denied.

In March 2019, Kapordelis filed a pro se petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the Western District of Louisiana against Rodney Myers, the warden at Oakdale. In his § 2241 petition, Kapordelis asserted that his due process rights were violated because no evidence was presented that he intentionally destroyed his CPAP mask and the DHO relied on a statement that, according to Kapordelis, Dr. Russell never made. Kapordelis also contended that revocation of good-time credits for

accidentally breaking a mask that he required because of a disability violated the Americans with Disabilities Act. He sought expungement of the incident report, restoration of good conduct time, and a transfer to a prison facility closer to his family in Tampa, Florida.

In opposition, the respondent countered that Kapordelis failed to demonstrate that his due process rights had been violated. The respondent cited the DHO's post-hearing declaration, which stated that "explicit intent to destroy government property is not a necessary threshold for finding an individual guilty." Relying on this interpretation, the respondent asserted that Kapordelis's admission that the CPAP mask broke while in his possession and the statement given by the CPAP representative were "sufficient to find [Kapordelis] guilty of wrongfully destroying government property, either through explicit intention or negligent and/or improper use."

The magistrate judge to whom the case was assigned recommended that Kapordelis's § 2241 application be denied and dismissed with prejudice. Based on the disciplinary hearing evidence and the BOP regional director's appellate finding that Kapordelis had failed to present any evidence to support his assertion that the damage to the mask was accidental, the magistrate concluded that "the evidence [was] sufficient to sustain a disciplinary conviction." Furthermore, the magistrate found that Kapordelis failed to provide any support for his allegation that Dr. Russell did not make the statement attributed to him.

Over Kapordelis's objections, the district court adopted the magistrate judge's recommendation and dismissed Kapordelis's § 2241 application. The district court observed that "[t]he DHO's findings clearly point[ed] to a finding of intentional damage, as she repeatedly cited Dr. Russell's statement that the mask generally would not break without an 'intentional' act." The district court ultimately held that Kapordelis's

admission that the mask broke in his possession, coupled with the statements from the CPAP representative and Dr. Russell establishing that "this would not ordinarily occur on accident," were sufficient to support the disciplinary conviction under the "some evidence" standard. Kapordelis challenged the district court's ruling in a timely motion under Federal Rule of Civil Procedure 59(e), repeating his prior arguments. The district court denied that motion, and Kapordelis timely appealed.

## II.

Kapordelis raises four issues on appeal: (1) whether the district court erred in finding there was "some evidence" from which the DHO could conclude that Kapordelis intentionally broke his CPAP mask; (2) whether Disciplinary Code 218 provided fair notice that it proscribes unintentional conduct resulting in damaged property; (3) whether there was "some evidence" to support the DHO's finding that Kapordelis caused damage in excess of $100; and (4) whether the district court erred by denying Kapordelis's Rule 59(e) motion.[1] We address each issue in turn.

## A.

Kapordelis first contends that the district court erred in finding there was sufficient evidence for the DHO to conclude that he intentionally damaged his mask in violation of Disciplinary Code 218. We review this issue of law de novo. *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007); *Hudson v. Johnson*, 242 F.3d 534, 535 (5th Cir. 2001).

---

[1] Kapordelis does not address his claims arising under the Americans with Disabilities Act and alleging a denial of due process on the ground that Dr. Russell's statement was falsely attributed to him. Therefore, he has abandoned these claims. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (observing that although this court liberally construes pro se briefs, arguments must be briefed to be preserved).

Because Kapordelis has a liberty interest in his accumulated good time credits, revocation of the credits must comply with minimal requirements of due process. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453–56 (1985); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The Supreme Court has held that due process is satisfied in this context if, *inter alia*, "some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Hill*, 472 U.S. at 455. Under this standard, "prison disciplinary proceedings will be overturned only where there is *no evidence whatsoever* to support the decision of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994) (per curiam) (emphasis added).

This court is not required to examine the entire record of a disciplinary proceeding, independently assess witness credibility, or weigh the evidence to determine whether "some evidence" supports the DHO's decision. *See Hill*, 472 U.S. at 455–56. Rather, we examine whether the finding of guilt has the "support of some facts or any evidence at all." *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986) (internal quotation marks and citation omitted). Only when the record is "so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary" will we grant habeas relief on this ground. *Hill*, 472 U.S. at 457 (finding the "some evidence" standard met even where there was "no direct evidence" and the existing evidence was "meager").

Kapordelis contends that the evidence the DHO cited in support of her decision fails to establish "some evidence" of intentional damage to his CPAP mask. He specifically challenges three things: First, the DHO relied on Kapordelis's admission that the mask broke while in his possession. But Kapordelis never admitted to damaging the mask intentionally. Instead, he stated that the mask "just snapped" when he removed it amidst a coughing

fit. We agree with Kapordelis that this "admission" does not, by itself, suffice as "some evidence" of intentional conduct.

Second, the DHO relied on a CPAP sales representative's statement that "it is far from common for the mask to just break unless it is user error." The district court found this to be evidence that a CPAP mask "ordinarily would not [break] on accident." However, Kapordelis contends that, read literally, the CPAP sales representative's statement merely suggests that it is uncommon for a mask to break unless the user accidentally or negligently does something to break it. We tend to agree. Even if the phrase "user error" includes intentional conduct, the CPAP sales representative's statement does not support the proposition that a mask would ordinarily break *only* due to intentional conduct. At essence, it is merely a truism that does not tend to prove or disprove the proposition that Kapordelis intentionally damaged his CPAP mask.

Thirdly, the DHO's report repeatedly cited Dr. Russell's conclusion, in response to whether "it [was] likely an inmate could break a CPAP mask," that "[i]n general use, unless it is an old mask, or unless it did not fit their face, it would have to be intentional for it to break." This is where Kapordelis's argument falters.

He asserts that Dr. Russell's statement is inapplicable because it pertains to the "hard plastic" part of the CPAP mask rather than its "flexible spacebar." But even assuming the mask's damage was limited to the spacebar, there is no evidence in the record indicating that the spacebar was more susceptible to breaking than the rest of the mask, or that it was not likewise composed of "hard plastic" as characterized by Dr. Russell in his statement.

Kapordelis further contends that Dr. Russell's statement is irrelevant because it was based on several caveats that were never verified. He points out that Dr. Russell conditioned his opinion on the age of the CPAP mask

and whether the mask fit the face of the wearer.  Although there is nothing to indicate that Dr. Russell ever examined Kapordelis's CPAP mask, we cannot say that these limitations deprive his statement of all evidentiary value.  The DHO's report and her subsequent declaration indicate that she considered, among other evidence, both Kapordelis's broken CPAP mask and Dr. Russell's statement at the hearing.  Thus, the DHO had the opportunity personally to observe Kapordelis's CPAP mask and evaluate the caveats in Dr. Russell's statement against it.

This is enough to meet the "some evidence" standard that governs our review.  In other words, "the record is not so devoid of evidence that the findings of the [DHO] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.  A prison official's disciplinary decision "will be overturned only where there is no evidence whatsoever to support [it]." *Reeves*, 19 F.3d at 1062.  Even discounting the other evidence relied upon by the DHO, her finding of culpability was supported, at a minimum, by Dr. Russell's statement that "it would have to be intentional for [the mask] to break," and the DHO's inspection of the broken mask itself.  We thus agree with the district court that there was sufficient evidence to support a finding of intentional damage to Kapordelis's CPAP mask under Disciplinary Code 218.

## B.

Kapordelis contends that Disciplinary Code 218 is impermissibly vague because it fails to provide fair notice that it proscribes damage caused by unintentional conduct.[2]  But Kapordelis forfeited this issue because, as he

---

[2] In her disciplinary hearing report, the DHO found that Kapordelis violated Disciplinary Code 218 without specifying whether she based her finding on intentional or unintentional conduct.  In her subsequent declaration submitted in response to Kapordelis's § 2241 petition, the DHO clarified that Kapordelis violated the rule by breaking his CPAP mask, regardless of "whether done intentionally or via negligent and/or

concedes in his brief, it "is being raised for the first time on appeal." *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). And he has failed otherwise to show that "a miscarriage of justice would result from our failure to consider [the issue]." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (internal quotation marks and citation omitted). Irrespective of forfeiture, because we agree with the district court that there was "some evidence" to support a finding of intentional damage to Kapordelis's CPAP mask, it is also unnecessary for us to address this issue further.

## C.

Kapordelis next asserts that the DHO's finding that he caused damage in excess of $100 was not supported by "some evidence" because he only broke the mask's "flexible spacebar," which he asserts "would likely cost less than $20 to replace." Again, "[w]hether there is 'some evidence' is an issue of law that we review de novo." *Teague*, 482 F.3d at 773 (citing *Richards v. Dretke*, 394 F.3d 291, 293 (5th Cir. 2004)).

According to the DHO's report, evidence was presented at the disciplinary hearing that a CPAP mask is valued at $200. While Kapordelis asserts that his sworn pleadings support a finding that any damage was limited to the mask's spacebar, which he says costs $20, he has neither provided any evidence of the actual cost to replace the spacebar nor established that the spacebar was detachable and capable of being purchased separately from the more expensive mask. To the contrary, the record shows that Kapordelis was issued an entirely new CPAP mask in August 2018. And the DHO observed Kapordelis's broken mask but made no findings that the

---

improper use . . . ." The DHO averred that "explicit intent to destroy government property is not a necessary threshold for finding an individual guilty of violating [BOP] Disciplinary Code 218."

damage was minimal or less than the mask's $200 value. Based on the foregoing, we find that the DHO's determination that Kapordelis caused damage in excess of $100 was supported by "some evidence."

### D.

Finally, Kapordelis challenges the district court's denial of his Rule 59(e) motion, which we review for an abuse of discretion. *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008). "A Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot raise issues that could, and should, have been made before the judgment issued." *Advocare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 691 (5th Cir. 2008) (internal quotation marks and citation omitted). Those conditions are not met here.

The district court denied Kapordelis's Rule 59(e) motion upon finding there was "no cause to alter its judgment." On appeal, Kapordelis does not point to any specific error in the district court's denial of his motion. Rather, he recognizes that "[t]he issues raised in [his] Rule 59(e) pleading are precisely the same issues which are being raised (among others) in the instant appeal." Because we have already addressed Kapordelis's contentions in our discussion above, we conclude for the same reasons that the district court did not abuse its discretion in denying Kapordelis's Rule 59(e) motion.

\*      \*      \*

For the foregoing reasons, the district court's judgment is

AFFIRMED.